UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMSOUTH BANK, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>WALL STREET DELI SYSTEMS )<br>INC., PAT FRANCHISE SYSTEMS )<br>INC., PAT SERVICES, INC., )<br>TRUFOODS CORP., and PUDGIE'S )<br>RESTAURANT CORP., )<br>)<br>   Defendants. ) | Case No. CV 03-AR-3136-S<br><br>**ENTERED**<br>FEB 2 7 2004 |

## MEMORANDUM OPINION ON
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

    Before the Court is a Motion for Summary Judgment, Brief in Support of Summary Judgment, and Evidentiary Submission (collectively, the "Motion") by AmSouth Bank ("AmSouth" or "Plaintiff"). Defendants Wall Street Deli Systems, Inc. ("WSDSI"), Pat Franchise Systems, Inc. ("PFSI"), Pat Services, Inc. ("PSI"), TruFoods, Corp. ("TC"), and Pudgie's Restaurant Corp. ("PRC") (collectively, the "Defendants") have affirmatively stated they do not oppose the Motion. Although Defendants' failure to respond does not permit the court to enter a "default" summary judgment, it does, however, permit the court to accept AmSouth's evidence as undisputed. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1999) (noting that when the nonmovant submits no summary judgment response, the factual allegations of the movant are properly taken as true); *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). In failing to respond to AmSouth's Motion, Defendants have not only failed to demonstrate the existence of genuine issues of fact, but also have failed to

1206493

identify contradicting evidence in the record and to articulate the precise manner in which that evidence supports their claims. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998).

### Statement of Undisputed Facts

In May of 2002, AmSouth agreed to loan the principal amount of $1,073,807.97 to WSDSI. To evidence this loan, WSDSI[1] executed a promissory note in favor of AmSouth dated May 31, 2002 (the "Promissory Note"). On May 31, 2002, WSDSI granted a security interest to AmSouth in, among other things, WSDSI's Accounts, Inventory, General Intangibles, and Equipment. WSDSI also assigned and pledged a security interest in certain depository accounts. Finally, WSDSI assigned all right, title, and interest as tenant under any and all of its leases to AmSouth.[2]

A.   **Guaranty 1 and Security Therefor**

On May 31, 2002, as an inducement to AmSouth to make the loan to WSDSI, PFSI and PSI guaranteed the debt owed by WSDSI in favor of AmSouth ("Guaranty 1").[3]

1.   **PFSI**

On May 31, 2002, PFSI executed that certain Guarantor's Security Agreement in favor of AmSouth (hereinafter the "PFSI Security Agreement), whereby PFSI granted AmSouth a

---

[1] The Promissory Note was executed by Jeffery Bernstein in his official capacity as President of WSDSI.

[2] All of the collateral pledged or assigned to AmSouth by WSDSI is more specifically defined in AmSouth's Motion, filed of record in this matter, and is collectively referred to herein as the "WSDSI Collateral."

[3] Guaranty 1 was executed by Jeffery Bernstein in his official capacity as President of both PFSI and PSI.

1206493                                    2

security interest in, among other things, PFSI's Accounts.[4] AmSouth's recourse against PFSI is limited to the collateral set forth in the PFSI Security Agreement.

        2.    **PSI**

On May 31, 2002, PSI executed a Stock Pledge Agreement (hereinafter, the "PSI Stock Pledge Agreement") in favor of AmSouth, whereby PSI granted AmSouth a security interest in, among other things, 100 shares of stock, as well as dividends therefrom, in a company known as Pudgies No. 9010 Baldwin Harbor, Inc.[5] Pursuant to paragraph 6 of Guaranty 1, AmSouth's recourse against PSI is not limited to the PSI Collateral, and is "unlimited in all respects."

    B.    **The First Default: Forbearance 1**

On December 17, 2002, in consideration for AmSouth's agreement to forbear from exercising its rights and available remedies pursuant to WSDSI's admitted default of the Promissory Note, WSDSI, PFSI, and PSI executed that certain Forbearance Agreement (hereinafter, "Forbearance 1"), which, among other things, acknowledges a default of the Promissory Note. Forbearance 1 extended the maturity date of the Promissory Note.

    C.    **The Second Default: Forbearance 2, Guaranty 2, and Additional Security.**

        1.    **Forbearance 2**

On April 16, 2003, in consideration for AmSouth's agreement to forbear from exercising its rights and available remedies pursuant to another admitted default of the Promissory Note, WSDSI executed (i) another Forbearance Agreement, which agreement was also executed by

---

[4] The collateral pledged pursuant to the PFSI Security Agreement is more specifically defined in AmSouth's Motion, filed of record in this matter, and is hereinafter referred to as the "PFSI Collateral."

[5] The collateral pledged pursuant to the PSI Stock Pledge Agreement is more specifically defined in AmSouth's Motion, filed of record in this matter, and is hereinafter referred to as the "PSI Collateral."

PFSI and PSI (hereinafter, "Forbearance 2"); and (ii) an Amended and Restated Renewal Promissory Note dated April 15, 2003.[6] Forbearance 2 extended the maturity date of the Promissory Note again.

### 2. Additional Security From WSDSI

At the time of Forbearance 2, WSDSI also amended the WSDSI Security Agreement to include the additional guarantors discussed below and to provide as collateral those accounts owing to or acquired by WSDSI from stores operating with trade names of TruFoods Corp., Pudgies Restaurant Corp., Wall Street Deli or Arthur Treacher's, Inc. (or any similar name).[7]

### 3. Additional Security From PFSI And PSI

Contemporaneous with the execution of Forbearance 2, PFSI also amended the PFSI Security Agreement to expand the definition of Accounts to include those accounts owing to or acquired by PFSI from stores operating with trade names of TruFoods Corp., Pudgies Restaurant Corp., Wall Street Deli or Arthur Treacher's, Inc. (or any similar name).[8]

On April 16, 2003, PSI executed that certain Guarantor's Security Agreement in favor of AmSouth (hereinafter the "PSI Security Agreement"), whereby PSI granted a security interest in PSI's Accounts (which includes those accounts owing to or acquired by PSI from stores

---

[6] The Amended and Restated Renewal Promissory Note, as well as Forbearance 1 and Forbearance 2, is hereby included in the definition of "Promissory Note" used herein.

[7] The definition of WSDSI Security Agreement and WSDSI Collateral hereinafter includes such amendment and the collateral pledged pursuant to this amendment.

[8] The definition of PFSI Security Agreement hereinafter includes such amendment, and the definition of PFSI Collateral is more specifically defined in AmSouth's Motion, filed of record in this matter, and hereinafter includes the collateral pledged pursuant to this amendment.

operating with trade names of TruFoods Corp., Pudgies Restaurant Corp., Wall Street Deli or Arthur Treacher's, Inc. (or any similar name)).[9]

### 4. Guaranty 2: TruFoods Corp. And Pudgie's Restaurant Corp.

On April 16, 2003, contemporaneous with and as an inducement for AmSouth to execute Forbearance 2, TC and PRC guaranteed the obligations owed by WSDSI to AmSouth pursuant to the Promissory Note. Also on April 16, 2003, TC executed that certain Guarantor's Security Agreement[10] in favor of AmSouth (hereinafter the "TC Security Agreement"), whereby TC granted a security interest in TC's Accounts, to include those accounts owing to or acquired by TC from stores operating with trade names of TruFoods Corp., Pudgies Restaurant Corp., Wall Street Deli or Arthur Treacher's, Inc. (or any similar name).[11]

On April 16, 2003, PRC also executed a Guarantor's Security Agreement[12] in favor of AmSouth (hereinafter the "PRC Security Agreement"), whereby PRC granted a security interest in PRC's Accounts, to include those accounts owing to or acquired by PRC from stores operating

---

[9] The collateral pledged pursuant to the PSI Security Agreement is more specifically defined in AmSouth's Motion, filed of record in this matter, and is hereinafter included in the definition "PSI Collateral."

[10] The TC Security Agreement was executed by Jeffery Bernstein in his official capacity as President of TC.

[11] The collateral pledged pursuant to the TC Security Agreement is more specifically defined in AmSouth's Motion, filed of record in this matter, and is hereinafter referred to as the "TC Collateral."

[12] The PRC Security Agreement was executed by Jeffery Bernstein in his official capacity as President of PRC.

with trade names of TruFoods Corp., Pudgies Restaurant Corp., Wall Street Deli or Arthur Treacher's, Inc. (or any similar name).[13]

Guaranty 2 is limited to the collateral set forth in TC's and PRC's respective security agreements.

D.  **Obligations Under The Promissory Note And Default**

   1.  **Terms Of And Obligations Under The Promissory Note**

Pursuant to the Promissory Note (as amended), WSDSI is obligated to pay $10,000.00 each month to AmSouth. These payments were to commence on April 1, 2003 and continue on the same day of each calendar month thereafter until maturity. The Promissory Note matured on January 5, 2004, and accordingly, the entire principal balance, plus accrued and unpaid interest, is now due and owing.

Failure to timely pay the monthly payments when due under the Promissory Note results in a late charge equal to five percent (5%) of the payment which is in default. Upon a default of the Promissory Note, WSDSI is further liable for interest at the Default Rate of two percent (2%) plus the rate found in the Promissory Note (which is Prime plus two percent (2%) per annum). Thus, the effective Default Rate is Prime plus four percent (4%) per annum. Also pursuant to the Promissory Note, AmSouth is entitled to attorneys' fees incurred in connection with any default of the Promissory Note.

---

[13] The collateral pledged pursuant to the PRC Security Agreement is more specifically defined in AmSouth's Motion, filed of record in this matter, and is hereinafter referred to as the "PRC Collateral."

2.   **Default by WSDSI and the Guarantors**

WSDSI is in default of its payment obligations owed to AmSouth pursuant to the Promissory Note. Notice was given to WSDSI of the default on September 23, 2003, and notice of acceleration was given October 10, 2003. The default has not been cured.

Moreover, paragraph 10(a) of the WSDSI Security Agreement executed on May 31, 2002 requires seventy percent (70%) of permitted store sales to be paid to AmSouth. On or about June 25, 2003, AmSouth received a letter from WSDSI's Chief Financial Officer regarding the sale of a Houston, Texas store for $170,000.00. He later confirmed the sale orally. According to the terms of the WSDSI Security Agreement, $119,000 of the proceeds from this previously-approved sale should have been remitted to AmSouth ($170,000.00 x .70 - $119,000.00). WSDSI failed to pay the required monies to AmSouth following the sale. WSDSI is in default of this covenant.

Finally, paragraph 4(e) of Forbearance 2 requires WSDSI to deliver an executed letter of intent for the sale of WSDSI stores no later than May 31, 2003. WSDSI failed to timely deliver such letter. WSDSI is in default of this covenant.

AmSouth sent notice of WSDSI's default, as well as subsequent notice of acceleration, to each of the Guarantors. The Guarantors are in default of their respective obligations. The Guaranties allow AmSouth to collect attorneys' fees, costs, and expenses from PFSI, PSI, and TC incurred by AmSouth in connection with collection thereunder.

E.   **The Debt**

On November 24, 2003, AmSouth initiated this action by filing a complaint against WSDSI, PFSI, PSI, TC, and PRC. It is uncontroverted that as of February 9, 2004, the principal due under the Promissory Note is $835,198.78. Moreover, late charges in the amount of $43,393.73 remain unpaid. $26,021.60 is owed in accrued but unpaid interest. Per diem interest

of $185.60 continues to accrue each day the Promissory Note remains unpaid. Finally, AmSouth has incurred and will incur $23,381.38 in attorneys' fees and costs with respect to this action. In sum, the uncontroverted indebtedness owed by WSDSI is $927,995.49 (835,198.78 + 43,393.73 + 26,021.60 + 23,381.38 = $927,995.49) plus interest of $185.60 per diem from February 9, 2004 (the "Indebtedness").

## II. ANALYSIS

In Alabama, the holder of a promissory note offers sufficient evidence to support a motion for summary judgment when the holder proffers a copy of the note and affidavit testimony as to the amounts due under the note and the defendant's failure to make the required payments. *See Griffin v. American Bank*, 628 So. 2d 540, 543 (Ala. 1993) (bank entitled to summary judgment on promissory note where bank's president submitted affidavit attaching note and stating that borrower made no payments on note, and borrower did not offer evidence in defense); *Neal v. Redstone Federal Credit Union*, 447 So. 2d 805, 807 (Ala. Civ. App. 1984).

In *Neal*, the court granted summary judgment in favor of the plaintiff creditor after considering the plaintiff's affidavits in support of its claims. The court concluded that the plaintiff's affidavits showed an absence of a genuine issue of material fact and that the defendant could not thereafter "rest upon mere allegations or denials as averred in his multitude of pleadings." Instead, the defendant was obligated to do something more:

> Under those circumstances [the defendant] was obligated and required to present proof of facts through some authorized means which at least presented a scintilla of evidence[14] in support of his factual position so as to establish that a question of

---

[14] Since the *Neal* decision in 1984, the "scintilla of evidence" standard has been abrogated in favor of the higher "preponderance of the evidence" standard which the nonmovant must satisfy in order to establish a genuine issue of fact sufficient to defeat a motion for summary judgment. *Velten v. Regis B. Lippert, Intercat, Inc.*, 985 F.2d 1515 (11th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

fact existed. Since the defendant wholly failed to do this, the trial court had no alternative but to grant summary judgment in favor of the plaintiff.

*Id.* at 807.

In this case, the Defendants have not offered any evidence that can create a genuine issue for trial. Indeed, Defendants have not offered any evidence or otherwise responded at all. Accordingly, AmSouth is entitled to recover the entire Indebtedness due and owing under the Promissory Note, and its Motion for Summary Judgment is therefore due to be granted against WSDSI.

Moreover, both Guaranty 1 and Guaranty 2 state that "[i]n the event of a default by [WSDSI] in the payment or performance of any other Obligations [as defined therein], the Guarantors jointly, severally and unconditionally, except as otherwise expressly set forth herein, promise to pay [AmSouth] such amounts as are necessary to cure the default, or at the option of [AmSouth], the Guarantors jointly and severally agree to pay the entire indebtedness owed [AmSouth] at the time of default." Further, both Guaranty 1 and Guaranty 2 state that "the Guarantors jointly and severally guarantee the payment of all costs, attorney fees, or expenses which may be incurred by [AmSouth] by reason of a default under the Loan Documents or a default of [WSDSI] under any other Obligations."

AmSouth has proven the three elements needed to recover under a Guaranty Agreement under Alabama law: (1) the existence of the guaranty; (2) default under the underlying obligations of the guaranty; and (3) non-payment by the guarantor of the amounts due under the terms of the guaranty. *Sharer v. Bend Millwork Sys., Inc.*, 600 So. 2d 223, 225-26 (Ala. 1992) (quoting *Delro Indus., Inc. v. Evans*, 514 So. 2d 976, 979 (Ala. 1987)).[15] The evidence before

---

[15] In order to recover under a continuing guaranty, an additional element of notice to the guarantor of the debtor's default must also be proved, unless the guarantor waives notice of default in the guaranty agreement. *Sharer*, 600 So. 2d at 226. Pursuant to the terms of the

the Court is clear that the guaranties exist, a default has occurred, and the Guarantors have failed to perform their obligations under their respective Guaranties. Summary judgment in full is therefore appropriate against each of the Guarantors in this case.

Both the Promissory Note and the Guaranties provide for the recovery of attorneys' fees and costs in the event of a default. The Promissory Note provides:

> Upon the occurrence of any Default or Event of Default, [WSDSI] will also pay to [AmSouth], in addition to the amount due, all costs of collecting, securing, or attempting to collect or secure this Note, including without limitation, court costs and reasonable attorneys' fees actually incurred, including fees on any appeal by either [WSDSI] or [AmSouth] and in any bankruptcy proceedings.

Moreover, the Guaranties state that "the Guarantors jointly and severally guarantee the payment of all costs, attorney fees or expenses which may be incurred by [AmSouth] by reason of a default under the Loan Documents or a default of Borrower under any other Obligations [as defined in the Guaranties]."

Under Alabama law, it is well settled that provisions relating to the payment of attorney's fees are enforceable. *See, e.g., Subway Restaurants, Inc. v. Madison Square Assoc., Ltd.,* 613 So. 2d 1255, 1257 (Ala. 1993) (holding that "[i]n Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of the action . . . when provided in a contract"); *Knight v. Hired Hand Green, Inc.*, 775 So. 2d 218, 222 (Ala. Civ. App. 1999) (holding that the plaintiff "was necessarily entitled to . . . an attorney fee for collection of that balance, pursuant to the clear terms of the contract"); *Smith v. Combustion Resources Eng'r, Inc.*, 431 So. 2d 1249, 1252 (Ala. 1983); *Lewis v. Haleyville Mobile Home Supply, Inc.*, 447 So. 2d 691, 692-93 (Ala. 1984).

---

Guaranties, the Guarantors expressly waived notice of the default. As a consequence, AmSouth is not required to prove that it gave the Guarantors such notice. Nonetheless, notice of default, with a demand for payment, was sent to each of the Guarantors.

The Affidavit of Robert B. Rubin establishes that, as of February 8, 2004, the fees charged by Burr & Forman LLP for services rendered to AmSouth in connection with this action are $16,488.33, and the expenses incurred are $893.05. Mr. Rubin estimates that additional fees required will be $5,000 and expenses will be $1,000. Accordingly, the total legal fees and expenses incurred and to-be-incurred are $23,381.38. The Court finds that said fees and expenses are reasonable. Based upon the law cited above, AmSouth is entitled to recover attorneys' fees and costs incurred in enforcing the Promissory Note and Guaranties. *See also Robbins v. Smith*, 495 So. 2d 577, 580 (Ala. 1986) (holding that "a reasonable attorney fee may be set by the court in its discretion. 'The court is presumed to have knowledge, even without evidence, from which it may set such a fee'"). Under the terms of the Promissory Note and the Guaranties, WSDSI, PFSI, PSI, and TC are liable for all costs and attorneys' fees which arose in connection with the collection of Defendants' obligations.

### III. CONCLUSION

By separate order, the court will grant Amsouth's motion for summary judgment.

DONE this 27th day of February 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE